IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE R. BAYNES, | ) | CASE NO. 1:14-CV-01320 |
| | ) | |
| Plaintiff, | ) | JUDGE GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, George R. Baynes ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a).  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.  PROCEDURAL HISTORY

On August 22, 2011, Plaintiff filed an application for SSI, alleging a disability onset date of July 31, 2011.  (Transcript ("Tr.") 199.)  Plaintiff's claim was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.*)  On November 13, 2012,, an ALJ held Plaintiff's hearing.  (*Id.*)  Plaintiff participated in the hearing, was represented by counsel, and testified.  (Id.)  A vocational expert ("VE") also testified.  (*Id.*)  On January 28, 2013, the ALJ found that Plaintiff was not

disabled. (Tr. 196.) On April 14, 2014, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision. (Tr. 1.)

On June 18, 2014, Plaintiff filed his complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this matter. (Doc. Nos. 14, 15.)

Plaintiff asserts the following broad assignment of error: The ALJ erred at multiple steps of the five-step sequential evaluation process in finding that Plaintiff is not disabled.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in August 1957. (Tr. 304.) He had a high school education and was able to communicate in English. (Tr. 332.) He had past relevant work as a fast food worker. (Tr. 204.)

### B. Medical Evidence

#### 1. Medical Reports

On July 31, 2011, Plaintiff entered the hospital after sustaining gunshot wounds to his thighs that caused a left femur fracture and a right iliac crest fracture. (Tr. 392-393.) Plaintiff's fractures were treated without surgery, and he was discharged from the hospital on August 6, 2011. (Tr. 392.) Plaintiff participated in acute rehabilitation from August 7 through August 17, 2011. (Tr. 296.) Treatment notes from August 29, 2011, indicate that Plaintiff's wounds were healing and that his pain was controlled. (Tr. 394.) He was non-weight bearing through the left leg. (*Id.*)

On August 30, 2011, Plaintiff reported no new complaints and claimed that his pain

was well-controlled. (Tr. 396.) He was non-weight bearing in the left lower extremity and reported difficulty with some activities of daily living such as going up and down stairs, getting in and out of the car and the tub, and getting dressed. (Tr. 445.)

After completing acute therapy, Plaintiff began physical therapy with Ryan Monti, PT, DPT. Dr. Monti scheduled 15 sessions that would take place one-to-three times each week. (Tr. 447.)

On January 11, 2012, Aaron Pemberton, M.D., noted that Plaintiff complained of pain and spasms in his left thigh, but that he was "ambulating without any walking aids." (Tr. 514.) Dr. Pemberton reviewed an imaging study and reported that while the left femur fracture was still visible, it was filling in. (*Id.*) On examination, Dr. Pemberton reported a left thigh gunshot wound that was well-healed with no signs of infection. (*Id.*) He made the same findings with regard to Plaintiff's right thigh and reported good ranges of motion for both of Plaintiff's knees. (*Id.*) Dr. Pemberton suggested that Plaintiff take Aleve for pain/inflammation. (*Id.*)

On January 18, 2012, Tonia Morris reported that Plaintiff was not at risk for falls and that the hospital had not implemented a falls protocol procedure for him. (Tr. 508.) John Kanaan, M.D., reported that Plaintiff had come to the hospital because his pain was out of control. (*Id.*) Plaintiff reported that physical therapy had helped to some extent, but that he still had pain in his right and left knees, right hip, and abdomen. (*Id.*) Plaintiff also complained of having several stressors in his life. (*Id.*)

On April 11, 2012, medical technician Ty-Meisha Funches-Pickney reported that Plaintiff was identified as a fall risk due to his need for a cane/crutches, walker, and wheelchair/scooter. (Tr. 605.) Dr. Kanaan noted that Plaintiff complained of his legs

3

giving out and causing him to fall. (Tr. 606.) Dr. Kanaan reported that Plaintiff had some pain from the gunshot wounds at the lap and entry sites, but noted that the pain was "decently controlled with 2 Aleve." (*Id.*) On neurological examination, Dr. Kanaan reported no focal deficits and observed that Plaintiff moved all of his extremities to command. (Tr. 607.) Plaintiff had normal (5/5) muscle strength, but had some pain with strength and range of motion testing. (*Id.*)

On July 28, 2012, Plaintiff reported severe pain on both sides of his chest and in his left arm. (Tr. 624.) He also reported that he exercised frequently by walking/swimming daily and never experienced discomfort. (*Id.*) He also reported smoking marijuana to relieve the pain. (*Id.*)

Plaintiff complained of left shoulder pain again on October 1, 2012. (Tr. 630.) At that time, Jacqueline Trotter reported that Plaintiff was not at risk for falling. (*Id.*) That same day, Plaintiff saw Tharmathai Ramanan, M.D., for a follow-up due to hypertension. (*Id.*) Dr. Ramanan recorded Plaintiff's complaint of left shoulder pain. (*Id.*) He noted that Plaintiff's pain occurred mostly at night and was not exertional. (*Id.*) Dr. Ramanan also noted that Plaintiff did not like to take pain medication and that Plaintiff had a history of a gunshot wound from the previous year that affected his shoulders. (*Id.*)

C.  **Hearing Testimony**

1.  **Plaintiff's Hearing Testimony**

Plaintiff was 53-years-old on his alleged disability onset date and 55-years-old at the time of his hearing. (Tr. 218.) He graduated high school and completed one year of college. (*Id.*) Plaintiff had a driver's license and could drive a vehicle for about 25 minutes before his ankles and knees began to hurt. (Tr. 219.) Plaintiff stated that he experienced

pain in both knees and his right ankle. (Tr. 220.) He stated that he did not take medications for his pain because he could not afford them. (*Id.*) Plaintiff noted that he had been shot a number of times and that he was last shot on July 31, 2011. (Tr. 221.) He alleged that his current problems were a result of being shot six or more times. (Tr. 222.)

Plaintiff testified that as a result of his most recent gunshot wound, he could only walk for two or two and a half blocks. (Tr. 226.) He stated that people always walked with him due to his fear of falling. (*Id.*) Plaintiff reported that he had fallen as recently as the previous Thursday. (*Id.*) He stated that if he experienced pain when going out, he used crutches, a walker, or a cane. (Tr. 231.) When asked why he did not bring his cane to the hearing, Plaintiff responded that he did not know that he was going to experience so much pain. (*Id.*) Plaintiff testified that he lived with his sister and that she did most of the household chores. (Tr. 234.) Plaintiff only left his house to attend church or to go to his doctor's appointments. (*Id.*)

## 2. Vocational Expert's Hearing Testimony

Kevin Yi, a vocational expert, testified at Plaintiff's hearing. The VE stated that Plaintiff had past relevant work as a fast food worker. (Tr. 242.)

The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and past relevant work experience. (*Id.*) The individual could perform work at the light exertional level, but would be limited to using the dominant left hand as an assist, and would be unable to work overhead with the left upper extremity. (*Id.*) The VE testified that the Dictionary of Occupational Titles ("DOT") "does not address one hand or two hand, or dominant hand or nondominant hand" restrictions, and therefore his testimony would be based on his experience, his understanding of the jobs, and the industry

5

standard. (*Id.*) The VE testified that the hypothetical individual would be capable of performing the job of a fast food worker. (*Id.*)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not

prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since August 22, 2011, the application date.

2. The claimant has the following severe impairments: lower extremity fracture and diabetes.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he is limited to using the dominant left hand as an assist only, and is unable to work overhead with the left upper extremity.

5. The claimant is capable of performing past relevant work as a fast food worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

6. The claimant has not been under a disability, as defined in the Social Security Act, since August 22, 2011, the date the application was filed.

(Tr. 201-204.)

### LAW & ANALYSIS

#### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether

the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

    **B.**    **Plaintiff's Assignment of Error**

        **1. The ALJ Erred at Multiple Steps of the Five-Step Sequential Evaluation Process in Finding That Plaintiff is not Disabled.**

Plaintiff argues that the ALJ erred at multiple steps in the five-step sequential evaluation process in finding that Plaintiff is not disabled. Specifically, Plaintiff maintains that the ALJ erred in finding that Plaintiff did not meet Listing 1.06 and that Plaintiff had the residual functional capacity (RFC) to perform his past relevant work. Plaintiff also argues

8

that the ALJ erred in relying on the VE's testimony to conclude that Plaintiff is not disabled. The Court will address each argument in turn.

### a. Step 3: Listing 1.06

Plaintiff contends that remand is appropriate because the ALJ improperly determined that Plaintiff's severe physical impairment, a lower extremity fracture, did not meet or medically equal an impairment in the Listings—particularly Listing 1.06. For the following reasons, Plaintiff's argument is not well taken.

In order to satisfy Listing 1.06: *Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones,* Plaintiff must demonstrate:

> A. Solid union not evident on appropriate medically acceptable imaging and not clinically solid;
> and
>
> B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

20 C.F.R. § 404, Subpt. P, App. 1, 1.06. It is Plaintiff who has the burden of proving that he satisfies the listing. See *Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013). Here, Plaintiff maintains that the following evidence supports a conclusion that Plaintiff's condition satisfies Listing 1.06:

- The record demonstrates that in July 2011, Plaintiff sustained gunshot wounds resulting in a fracture of his left femur. (Tr. 392.)

- Progress notes from January and April of 2012 reveal that Plaintiff's fracture was "still visible," suggesting non-union of the fracture. (Tr. 514.)

- In April 2012, Plaintiff was identified as a fall risk and reported that his legs often gave out. (Tr. 606.)

9

- Plaintiff testified at his hearing that he required a cane to ambulate, he could only walk two and one-half blocks, and he could not stand for long periods of time.  (Tr. 220.)

- Even in April 2013–more than 18 months after his injury–Plaintiff continued to complain of diffuse pain and muscle spasms in his lower extremities. (Tr. 7.)

Here, the ALJ did not err in determining that "the objective medical evidence of record does not support a finding that the claimant experiences symptoms or limitations of a severity sufficient to meet or medically equal the requirements set forth in [Listing 1.06]."  (Tr. 201.)  The ALJ specifically discussed Plaintiff's gunshot injuries from July 2011, and considered all of the aforementioned evidence upon which Plaintiff relies in arguing that he meets Listing 1.06.  In addressing Plaintiff's lower extremity fracture, the ALJ wrote:

> Two months after the [July 2011] incident, [Plaintiff] was allowed to bear weight on his left leg, and he was reporting minimal to no pain.  He underwent physical therapy from which he was discharged in December 2011 after completion of treatment and attainment of goals.  He was ambulating with a normal gait and without an assistive device, able to navigate 12-15 stairs at a time, and was able to pick things up off the ground.  (Ex. 3F; 6F; 7F)
>
> On January 18, 2012, he complained of worsening pain.  On examination, he demonstrated full strength and range of motion in the lower extremities, although his knees were tender on palpation.  He was advised to take extra Aleve on days of worsening pain.  Notably, just two days later at a diabetes checkup appointment, he reported walking 30 minutes per day and exercising at home for 45 minutes per day.  (Ex. 6F)
>
> * * *
>
> [Plaintiff's] most recent gunshot wounds healed in a matter of months, and there is no objective evidence that his leg does in fact give out or that would account for an increase in pain.

> Further, he takes only Aleve for his pain, refusing stronger medication, which suggests his pain is not that severe. He subjectively reports smoking marijuana for pain control, a claim made only after he filed his request for hearing and which is unsubstantiated. He testified that he has crutches, a walker and a cane to rely on when he has pain, yet at the same time reports his pain is controlled with over-the-counter medication. Further, there is no indication from any doctor that he currently requires an assistive device, and of note, he attended his hearing without one. (Ex. 9F)

(Tr. 203-204.) Thus, the ALJ does not, as Plaintiff contends, ignore pertinent evidence relating to Plaintiff's fracture and its resulting pain, nor does the ALJ provide only a "cursory analysis" of the evidence at step 3 of the sequential evaluation process.

In finding that Plaintiff did not have an impairment that met or medically equaled the severity of Listing 1.06, the ALJ acknowledged that Plaintiff had a fractured femur, that he complained of pain more than a year after his injury, and that he testified that he used assistive devices, including a cane. (*Id.*) As the ALJ explained, however, objective medical evidence did not support a finding that Plaintiff had a non-healing fracture and an inability to ambulate effectively for 12 months. As early as January 11, 2012, Dr. Pemberton reported that Plaintiff was ambulating without any walking aids. (Tr. 514.) On November 20, 2012, Plaintiff reported that he walked 30 minutes each day and exercised at home for 45 minutes per day. (Tr. 504.) Furthermore, while a medical technician reported that Plaintiff was a fall risk in April 2012, treatment records from January and October 2012 indicate that Plaintiff was *not* at risk for falls. (Tr. 508, 605, 630.) The ALJ did not ignore this evidence, but rather commented on it, observing that, other than one report from April 2012, there was no medical documentation of Plaintiff's falling. (Tr. 203.) The ALJ also noted that although Plaintiff testified that he used a cane, there was no indication from any doctor that

11

Plaintiff required an assistive device, and Plaintiff did not bring a cane to his hearing.  (Tr. 204.)

Plaintiff argues that his participation in physical therapy following his gunshot injuries in July 2011 was unhelpful and actually increased his pain; however, as the ALJ noted, Plaintiff was discharged from physical therapy in December 2011 after successful completion of treatment and attainment of goals. (Tr. 203, citing Exs. 3, 6F, 7F.)  At that time, he was ambulating with a normal gait and without an assistive device, able to navigate 12-15 stairs at a time, and was able to pick things up off the ground.  (*Id.*)  Furthermore, in arguing that he meets the criteria of Listing 1.06, Plaintiff cites to evidence demonstrating that his fracture was still visible, via imaging, in January 2012.  (Plaintiff's Brief ("Pl.'s Br.") at 6-7.)  As early as August 29, 2011, however, orthopedic surgeon Dr. Johnston reported that Plaintiff's wounds were healing well and that his pain was controlled.  (Tr. 394, 443.)  While Plaintiff asserts that x-ray findings suggest a non-union, he points to no evidence from a physician who reviewed those x-rays and suggested a problem of non-union or failure of the fracture to heal.

Substantial evidence, as discussed by the ALJ and recounted above, supports the ALJ's determination that Plaintiff did not meet or equal Listing 1.06.  Plaintiff has not demonstrated that his femur fracture failed to heal, nor has he demonstrated an inability to ambulate effectively.  As a result, Plaintiff is not entitled to remand of his case on this point.

### b. Step 4: Past Relevant Work

Plaintiff next argues that the ALJ erred at step 4 of the sequential evaluation process in finding that he is capable of performing his past relevant work as a fast food

worker.  According to Plaintiff, he is limited to, at best, sedentary work.  In arguing that he cannot perform work at the light exertion level, and thus is unable to perform his past work, Plaintiff asserts that the ALJ failed to consider "all relevant and compelling evidence in reaching his conclusions regarding Plaintiff's residual functional capacity."  (Pl.'s Br. at 9.)  As the Commissioner correctly notes, however, Plaintiff fails to identify this "compelling evidence" or direct this Court to the relevant Transcript pages where this evidence may be found.

Plaintiff also fails to cite any support for his blanket assertion that he is capable of sedentary work at best.  He does not provide any physicians' opinions suggesting that he is limited to sedentary work, nor does he cite to any medical records to support his bare claim that "a careful and reasonable reading of the record of evidence would clearly preclude the plaintiff from the ability to perform the standing and/or walking requirements of light work."  (*Id.*)   Instead, Plaintiff argues, generally, that:

> [w]hile the ALJ provides a recitation of a portion of the medical record, she fails to recognize other various findings that consistently demonstrate the seriousness of Plaintiff's condition, and the profound limitations imposed by the same.  A thorough and comprehensive evaluation of these records as it relates to his abilities to stand or walk is wholly inconsistent with the ALJ's conclusions.  What is more, these records further provide valid supports for his need for a cane; which would ostensibly preclude the ability to stand or walk for most of the work day.

(Pl.'s Br. at 10.)  Plaintiff fails to cite to, or even identify, which records support his argument that the ALJ erred in finding him capable of performing his past work as a fast food worker.  Without reference to the administrative transcript, case law, or regulations supporting Plaintiff's assertions, this Court cannot properly determine whether Plaintiff's arguments have any merit.  As a result of failing to explain, develop, or provide an analytical

framework for his challenge to the ALJ's step 4 finding, Plaintiff has waived any argument on this point.  See *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir.2006) ("It is well-established that 'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir.1997)).

### c. Step 4: Reliance on VE Testimony

Finally, Plaintiff argues that the ALJ erred by relying on the VE's "considerably flawed" testimony at step 4 of the sequential evaluation process.  (Pl.'s Br. at 10.)  According to Plaintiff, he could not, as the VE testified, perform work as a fast food worker, because the Dictionary of Occupational Titles ("DOT") states that the job requires constant reaching and handling as well as frequent fingering.  Here, the ALJ limited Plaintiff to using his dominant left hand as an assist only, and no working overhead with the left upper extremity.  (Tr. 201.)  Plaintiff maintains that "it is very unlikely that one would be capable of successfully performing [the requirements of a fast food worker job] with the essential inability to use one dominant hand, other than as 'an assist.'" (Pl.'s Br. at 11.)  Plaintiff's argument is without merit.

Social Security Ruling 00-4P requires that before relying on VE evidence, the ALJ must ask the VE whether his or her testimony is consistent with the DOT and obtain a reasonable explanation for any conflicts between occupational evidence provided by the VE and information in the DOT.  SSR 00-4P (S.S.A. Dec. 4, 2000).  The ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by Social Security Regulation 00-4p, however, because that obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with

the DOT. Beinlich v. Comm'r of Soc. Sec., 345 F. App'x 163, 168 (6th Cir. 2009). "The fact that plaintiff's counsel did not do so is not grounds for relief." Id.; see also Donahue v. Barnhart, 446 F.3d 441, 446 (7th Cir. 2002) ("The ruling requires an explanation only if the discrepancy was 'identified'—that is, if the claimant (or the ALJ on his behalf) noticed the conflict and asked for substantiation. Raising a discrepancy only after the hearing, as Donahue's lawyer did, is too late."). But see Overman v. Astrue, 546 F.3d 456, 463 (7th Cir. 2008) (explaining that apparent conflicts include those that were so obvious during the VE's testimony that the ALJ should have noticed them and elicited reasonable explanations).

Here, the ALJ questioned the VE about his qualifications and the basis for his testimony (tr. 240-241), and gave Plaintiff's counsel the opportunity to cross examine him and address any conflicts with the DOT (tr. 243). Although Plaintiff's counsel had ample opportunity to do so, he did not question the VE about the reaching, handling, and fingering requirements of the fast food worker job. Because Plaintiff's counsel did not raise any discrepancy between the VE's testimony and the DOT at the hearing, Plaintiff cannot now argue that the ALJ erred by relying on the VE testimony to find that Plaintiff is capable of performing his past relevant work as a fast food worker. Furthermore, Plaintiff has failed to explain or develop his argument that it is "very unlikely" that Plaintiff could perform work as a fast food worker given the limitations described in the ALJ's RFC determination. Accordingly, Plaintiff has failed to show that the ALJ erred in relying on the VE's testimony at step 4.

## VI. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the

15

Commissioner's final decision be AFFIRMED.

s/ <i>Nancy A. Vecchiarelli</i><br>U.S. Magistrate Judge

Date: January 29, 2015

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).